# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| ALFRED H. LOCKHART, SR. and | : | CIVIL ACTION |
| DOROTHY A. LOCKHART | : | No. 05-125 |
| v. | : | |
| GOVERNMENT OF THE | : | |
| VIRGIN ISLANDS, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                                                 **August 3, 2009**

Defendants the Virgin Islands Government, Police Department, and its deputy chief and police officers in their official and individual capacities, move for summary judgment on all claims by Plaintiffs Alfred H. Lockhart, Sr. and Dorothy A. Lockhart, contending Plaintiffs' allegations of federal civil rights violations and conspiracy to cover-up the alleged violations, and various common law tort injuries, are time-barred or otherwise not actionable. Plaintiffs oppose the motions, contending their claims timely present genuine disputes of material fact. I agree with Defendants, granting judgment in their favor on all claims and dismissing this action with prejudice.

## FACTS

This action arises from a police investigation of domestic violence in the home of Alfred H. Lockhart, Sr. and his wife, Dorothy A. Lockhart, on August 12, 2003, during which their son, Alva J. Lockhart, was shot. He was pronounced dead on August 13, 2003, at 12:00 a.m.

It is undisputed Alva fired gunshots in the Lockhart residence on August 12, 2003, in the presence of family members.[1] In response to 911 reports of gunshots fired at the Lockhart residence, police officers investigated.[2]

---

[1] Defts' Stmt Undisputed Facts, and Pls' Resp., ¶¶ 1, 2.

[2] Defts' Stmt Undisputed Facts, and Pls' Resp., ¶¶ 4-6.

1

There are material inconsistencies in various accounts of events resulting in the shooting of Alva and the inferences to be drawn from the record, which turn on the credibility of many witnesses. But, there is no genuine dispute Officer George Greene shot Alva on August 12, 2003,[3] during the officers' investigation. The parties agree Deputy Chief Elvin Fahie, and Officers Rosalyn Pinney, Charles Gumbs, Donald Liburd, Melvin Boynes, and Dean Chinnery did not shot Alva.[4]

Plaintiffs in these consolidated actions allege Defendants conspired to cover-up their unjustified shooting of Alva, which conspiracy began when Officer Greene shot Alva on August 12, 2003, and continued into and beyond August 13, 2003.[5] There is no evidence to support these conspiracy charges. Plaintiffs ground their conspiracy charges on ordinary and customary actions the officers took in discharging their professional duties. Plaintiffs then characterize the officers' actions as steps taken in an assumed conspiracy, without ever pointing to a shred of evidence establishing a conspiratorial agreement or an overt act in furtherance of such an agreement. Administratrix Alaine Lockhart-Mollah admitted Plaintiffs' conspiracy claims are based exclusively on "information and belief."[6]

---

[3] Plaintiffs attempt to manufacture a dispute on this point, contending Special Operations Bureau officer(s) shot Alva. *See* Pls' Resp. to Defts' Stmt Undisputed Facts ¶ 9. Plaintiffs rely on Deputy Chief Elvin Fahie's testimony, 5/13/09 N.T. 34:25-37:13, however, his testimony does not support a reasonable inference in favor of Plaintiffs' conclusory assertion. Also, the Estate pled George Greene shot Alva. Am. Comp. 05-126 ¶¶ 26, 35. There is no genuine dispute about whether Greene shot Alva. *See Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 130 (3d Cir. 1998) (holding if no reasonable jury could find in the nonmoving party's favor based on the record as a whole, concerns regarding the credibility of witnesses cannot defeat summary judgment).

[4] Defts' Stmt Undisputed Facts, and Pls' Resp., ¶¶ 12-17.

[5] Am. Comps., 05-125 ¶ 60; 05-126 ¶ 55; 05-127 ¶ 57.

[6] Alaine Lockhart-Mollah 4/27/09 N.T. 109:11-113:17.

Alfred, Sr. and Dorothy contend Defendants excessively damaged their house and personal property. They provide no affirmative evidence of when or how their property was damaged, or who damaged their property. They only infer officers "ransacked" their house at some point after the Lockharts left their house on August 12, 2003, and before they returned from the hospital to their house on August 13, 2003, as part of the officers' "cover-up" of Alva's unjustified shooting.[7]

Alfred, Sr. and Dorothy provide no affirmative evidence to attribute specific damages to the conduct of an individual Defendant Officer Boynes, Liburd, Gumbs, Pinney, Chinnery, or Deputy Chief Fahie. Those officers testified they did not "ransack" or damage anything.[8] The record establishes only one instance of property damage for which one Defendant was responsible: Officer George Greene, who testified he shot through a bookshelf on August 12, 2003, when he shot Alva.[9]

Dorothy did not witness anyone damaging her property, did not know who damaged the various items, and did not know when they were damaged.[10] Their daughter who lived in the Lockhart residence, Alaine Lockhart-Mollah, did not know who damaged the items or when they were damaged.[11] Her husband, Eric Mollah, did not know who caused the damage.[12]

---

[7]See Am. Comp. ¶¶ 40-42, 51; Pls' Br. at 6-7, 9 ("It is therefore a fair inference that the house was ransacked and property damaged on August 13, 2003 *after* Mr. and Mrs. Lockhart and the rest of the family left to go to the hospital.").

[8]Boynes 5/7/09 N.T. 81:20-22; Dean Chinnery 5/8/09 N.T. 63:5-7; Pinney 5/7/09 N.T. 113:21-25; Liburd 5/6/09 N.T. 153:19-154:5.

[9]Greene 5/13/09 N.T. 114-119, 163:15-164:17.

[10]Dorothy Lockhart 5/14/09 N.T. 58-68.

[11]Alaine Lockhart-Mollah 4/27/09 N.T. 69-79.

[12]Eric Mollah 4/27/09 N.T. 54:18-55:11.

3

The record does not support Alfred, Sr.'s and Dorothy's conclusory allegations of the officers' "ransacking" of their house on August 13, 2003. Moreover, the record is insufficient to support a reasonable inference of any common law tort injuries occurring to any Plaintiff after August 12, 2003.

## **DISCUSSION**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). After one party has filed a properly supported summary judgment motion, the party opposing it must present sufficient evidence for a reasonable jury to find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986). The party opposing the motion must demonstrate a genuine dispute over facts affecting the outcome of the claim. *Id.* at 248.

Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial. The moving party is entitled to summary judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element with respect to which it has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party with the burden of proof on a dispositive issue at trial to "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts, showing that there is a genuine issue for trial.'" *Id.* at 324.

Defendants contend Alfred, Sr.'s and Dorothy's 42 U.S.C. § 1983 civil rights and conspiracy claims are barred by the Virgin Islands' two-year statute of limitations applicable to personal

injuries, 5 V.I.C. § 31(5)(A), or are otherwise not actionable. I agree.

Section 1983 does not create substantive rights; rather it provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979). A prima facie case requires a plaintiff to show: (1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Alfred, Sr. and Dorothy fail to timely advance any viable claims for deprivation of their federal rights.

Alfred, Sr. and Dorothy allege Defendants violated their constitutional rights to be free from unreasonable searches and seizures, "secure in their home and property," and accorded due process.[13] They advance Fourth Amendment claims based on the theories of an unreasonable search of their home and seizure of their persons. They also allege Defendants violated their rights under the Fifth and Fourteenth Amendments by "taking their property without due process of law."[14]

Alfred, Sr.'s and Dorothy's allegations boil down to charges of warrantless, unreasonable search and seizure cognizable only under the Fourth Amendment. *See Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (warrantless searches and seizures inside a home are presumptively unreasonable). Among the exceptions to the warrant requirement are exigent circumstances accompanied by probable cause, and consent. *Id.* at 403 ("One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury."); *Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir. 2006) (exceptions include exigent circumstances and

---

[13] Am. Comp. 05-125 ¶ 50.

[14] Am. Comp. 05-125 ¶¶ 50, 51.

5

consent (citing *Steagald v. United States*, 451 U.S. 204, 211 (1981)); *United States v. Wilson*, 413 F.3d 382, 388 (3d Cir. 2005) (holding "consent" is a question of fact determined on the totality of circumstances).

This record amply supports application of the exigent circumstances and consent exceptions to the general warrant requirement. There are exigent circumstances if the safety of law enforcement or the general public is threatened. *See, e.g.*, *Estate of Smith v. Marasco*, 318 F.3d 497, 518 (3d Cir. 2003) (citing *Warden v. Hayden*, 387 U.S. 294, 298-300 (1967) (exigent circumstances existed where safety of officers was in jeopardy)); *United States v. Parris*, 229 Fed.Appx. 130, 134 (3d Cir. 2007) (holding warrantless entry was justified where police were informed someone fired a gun inside home); *United States v. Mitchell*, 175 Fed.Appx. 524 (3d Cir.), *cert. denied*, 548 U.S. 918 (2006) (police were justified if not compelled to enter home after receiving report of shooting and seeing drops of blood on sidewalk and front steps).

The record equally supports the conclusion Alfred, Sr. and Dorothy suffered no deprivation of their Fourth Amendment rights. *See, e.g.*, *Torres v. United States*, 200 F.3d 179, 185 (3d Cir. 1999) (officers executing a search warrant may lawfully restrain person present at the searched premises (citing *Michigan v. Summers*, 452 U.S. 692, 705 (1981)); *Jones v. Philadelphia Police Dept.*, 57 Fed.Appx. 939, 941 (3d Cir. 2003) (holding officers did not violate Fourth Amendment by detaining innocent bystanders during a lawful search for a reasonable period, under reasonable conditions, to protect their safety and the safety of officers). Nonetheless, it is unnecessary to fully discuss and decide the Fourth Amendment violations advanced by Alfred, Sr. and Dorothy. All of their claims for federal civil rights violations are time-barred or otherwise not actionable as a matter of law.

Virgin Islands law governs the length of the limitations period for a § 1983 claim, but when that period accrues is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). The Virgin Islands' two-year statute of limitations applicable to personal injuries, 5 V.I.C. § 31(5)(A), governs the length of the limitations period. *Callwood v. Questel*, 883 F.2d 272, 274 (3d Cir. 1989) (relying on *Wilson v. Garcia*, 471 U.S. 261 (1985)). Under federal principles, a § 1983 claim accrues and the limitations period begins to run when the plaintiff has a complete and present cause of action and can file suit and obtain relief. *Wallace*, 549 U.S. at 388. Specifically, the action accrues when "the plaintiff knew or had reason to know the injury upon which its action is based." *Sameric Corp. of Del., Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998).

The record shows Alfred, Sr. and Dorothy knew or should have known about all alleged constitutional injuries to their liberty and property interests, which they witnessed on August 12, 2003. Their § 1983 claims based on those alleged injuries accrued on August 12, 2003, and were untimely filed on August 15, 2005.

Their only potentially timely claim arises from the alleged "ransacking" of their house by officers on August 13, 2003, which is supported entirely by conclusory accusations, not affirmative evidence. To the extent they advance any timely claims based on their alleged property damages from the "ransacking" on August 13, 2003, summary judgment is appropriate because they have failed to present sufficient evidence for a reasonable jury to find in their favor. *Anderson*, 477 U.S. at 250-52.

They contend they did not discover their home had been "ransacked" until August 13, 2003, when they returned from the hospital.[15] They point to a period of some hours, extending from the

---

[15]Pls' Stmt Undisputed Facts ¶55, 54-61; Pls' Resp. to Defts' Stmt Undisputed Facts ¶¶ 18-22.

time Alva was removed from the home and taken to the hospital on August 12, 2003, to the early morning hours of August 13, 2003, when officers purportedly were the only ones inside the house. The record, however, does not establish who was or was not in the house at that time, and there is no way to rule out the unattended presence of any of number of extended family members, friends, neighbors, and officials who were in the vicinity on August 12-13, 2003. Alfred, Sr. and Dorothy hypothesize based solely on the officers' presence in the home, Defendants must be responsible for their alleged property damages. They buttress this conclusion with testimony from Lockhart family members asserting they did not notice any damage before they left the home, and they first noticed damage after officers allowed them to return inside the home on August 13, 2003. They provide no affirmative evidence of when or how their property was damaged, or who damaged their property.

All of the available record evidence reasonably points to the inference Plaintiffs' property damages occurred on August 12, 2003.[16] In regard to Officer Greene, any federal civil rights claim based on his conduct in damaging the bookshelf on August 12, 2003, is barred either by the statute of limitations or his qualified immunity. *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

Alfred, Sr.'s and Dorothy's allegations are insufficient to state substantive due process claims under the Fourteenth and Fifth Amendments. *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47, 852-54 (1998). There is no evidence of arbitrary conduct by the officers, unjustified by legitimate

---

[16]*See* Defts' Br. at 6-7, Reply Br. at 2-5.

law enforcement objectives, which shocks the conscience. There is no support in the record for their charge that officers intentionally, deliberately "ransacked" their home. Even assuming the officers were responsible for some property damage, which has not been shown except for Officer Greene, their conduct at worst might rise to the level of negligence. "[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id*. at 849.

Moreover, there is no evidence showing their property was taken for public use in violation of the Fifth Amendment. There is evidence only of a temporary displacement from the home during a search justified by exigent circumstances. The economic impact of that search was minimal. Although Plaintiffs artfully characterize their claimed property damage as a "ransacking," the record shows their damages do not rise to the level of a "taking." *See, e.g.*, *Jones*, 57 Fed.Appx. at 943 (citing *Lawmaster v. Ward*, 125 F.3d 1341, 1351 (10th Cir. 1997) (plaintiff who alleged officers "ransacked" his home during a search failed to "allege any facts showing how his property was taken for public use in violation of the Fifth Amendment). Neither the Court nor the parties have found even one federal case holding a similar seizure constitutes a taking under the constitution. *See Jones*, 57 Fed. Appx. at 942-43 (quoting *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 335 (2002) ("orders temporarily prohibiting access to crime scenes . . . have long been considered permissible exercises of the police power," which do not trigger just compensation requirements).

In these consolidated actions, Plaintiffs argue Defendants engaged in a conspiracy to deprive them of rights guaranteed under § 1983. The Estate alleges Defendants conspired to violate Alva

Lockhart's civil rights by "allowing him to bleed to death,"[17] covering-up his unjustified shooting by Officer George Greene,[18] rearranging the scene of the shooting;[19] "ransacking" the Lockhart residence,[20] and submitting false police reports.[21] The remaining Plaintiffs, including Alfred, Sr. and Dorothy, advance the same conspiracy theory, alleging no separate conspiracy to violate their own personal constitutional rights or cover-up any of their own alleged constitutional injuries. Rather, Alfred, Sr. and Dorothy allege Defendants violated their First Amendment rights by covering-up facts concerning Alva's shooting and death, which impeded their own access to courts and judicial redress.[22]

Plaintiffs present no evidence of a conspiracy for a reasonable jury to find in their favor. Their conspiracy claims are without merit. Summary judgment is appropriate on all conspiracy claims advanced by each Plaintiff because their claims are conclusory accusations in their entirety, which would only invite jury speculation. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250-52; *Celotex*, 477 U.S. at 322-23. They present no genuine issues for trial. *Id*. at 324.

Moreover, Plaintiffs' claims are time-barred. The limitations period for a § 1983 civil conspiracy begins to run from "each overt act causing damage." *Kost v. Kozakiewicz*, 1 F.3d 176, 191 (3d Cir. 1993); *Wells v. Rockefeller*, 728 F.2d 209, 217 (3d Cir. 1983), *cert. denied*, 471 U.S.

---

[17]Am. Comp. 05-126 ¶¶ 36, 53.

[18]Am. Comp. 05-126 ¶¶ 35, 52-59.

[19]Am. Comp. 05-126 ¶¶ 36, 52-59.

[20]Am. Comp. 05-126 ¶¶ 38, 39, 41, 52-59.

[21]Am. Comp. 05-126 ¶¶ 41, 53, 55.

[22]Am. Comps., 05-125 ¶¶ 51, 52, 56-64; 05-127 ¶¶ 50, 51.

1107 (1985) ("actual injury is the focal point, not the illegal agreement per se"). The cause of action accrues when the plaintiff knows and should have known his or her constitutional rights have been violated, *Kost*, 1 F.3d at 191, and is subject to the Virgin Islands' two-year statute of limitations applicable to personal injuries, 5 V.I.C. § 31(5)(A).

Plaintiffs allege the conspiracy began when Officer Greene shot Alva on August 12, 2003, and continued into and beyond August 13, 2003. To the extent Alfred, Sr. and Dorothy allege Defendants violated their Fourth Amendment rights by ransacking their house to facilitate the alleged cover-up of Alva's unjustified shooting, Defendants' alleged conspiratorial motives caused them no separate constitutional injury. Moreover, Alfred, Sr. and Dorothy provide insufficient evidence of any deprivation of their constitutional or property rights on or after August 13, 2003. Thus, their conspiracy claims are either time-barred or not supported by the record.

Alfred, Sr. and Dorothy impermissibly attempt to manufacture viable, timely civil rights injuries by tying their alleged injuries from the "ransacking" onto conspiratorial actions purportedly occurring on or after August 13, 2003, which are not supported by the record. Plaintiffs must show two or more conspirators reached an agreement to deprive him or her of a constitutional right "under color of law." *Leer Elec., Inc. v. Pennsylvania, Dep't of Labor and Indus.*, 597 F. Supp.2d 470, 484 (M.D. Pa. 2009) (citing *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993). This Alfred, Sr. and Dorothy have failed to do.

Alfred, Sr. and Dorothy allege Defendants violated their own First Amendment rights by a conspiratorial cover-up of facts concerning Alva's injuries, thereby impeding and obstructing their own ability to pursue claims for their own constitutional injuries and property damages. Their First Amendment claims, however, are not actionable for the same reason: the record is devoid of any evidence whatsoever of an agreement, or any overt act in furtherance of an agreement, to conceal the facts concerning Alva's injuries.

The record is devoid of any evidence Defendants' actions prevented any of the Plaintiffs from filing suit or rendered their access to the courts ineffective or meaningless. "Cover-ups that prevent a person who has been wronged from vindicating his rights violate the right of access to the courts protected by the substantive due process clause." *Estate of Smith*, 318 F.3d at 511 (collecting authority). Despite the breadth of this general rule, a plaintiff cannot recover a constitutional remedy for cover-ups or discovery abuses after an action has been filed because the trial court can address those problems in on-going litigation. *Id*. at 511 ("[O]nly prefiling conduct that either prevents a plaintiff from filing suit or renders the plaintiff's access to the court ineffective or meaningless constitutes a constitutional violation." (citing *Foster v. City of Lake Jackson*, 28 F.3d 425, 430 (5th Cir. 1994) (suggesting the right of access to the courts encompasses a "a right to file an action, but not the right to proceed free of discovery abuses after filing")).

Alfred, Sr. and Dorothy filed suit on August 15, 2005, albeit one business day after the two-year limitation period prescribed for personal injury claims. There is no evidence Defendants were responsible for their filing delay. Moreover, there is no reason to believe any purported lack of information concerning Alva's shooting precluded the Lockharts from timely and fully asserting claims for their own injuries.

Alfred, Sr.'s and Dorothy's common law tort claims for negligence, recklessness or gross negligence, negligent training and entrustment, or negligent or intentional infliction of mental distress are time-barred by the Virgin Islands two-year limitation period, 5 V.I.C. § 31(5)(A).[23] *Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp.2d 545, 562 (D.V.I. 2004). Alfred, Sr. and Dorothy have failed to sufficiently support their conclusory accusations of property damage from the alleged "ransacking" on August 13, 2003. *Anderson*, 477 U.S. at 250-52. The record is equally insufficient to support a reasonable inference of any common law tort injuries occurring to any Plaintiff after August 12, 2003. After four years of litigation and adequate opportunity for discovery, Alfred, Sr. and Dorothy have not produced sufficient evidence because they cannot. *Celotex*, 477 U.S. at 324.

An appropriate order follows.

---

[23] Am. Comp. 05-125 Counts III-VIII.